**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JESSICA M. LEWIS, a/k/a
MARK L. BROOKS,

                            **Plaintiff,**

                            **v.**

**Civil No. 9:00-CV-1433 (GLS/DEP)**

**STAN BERG**, Assistant Deputy;
**Superintendent, Clinton Correctional Facility; DANIEL SENKOWSKI,**
**Superintendent, Clinton Correctional Facility**,

                            **Defendants.**

---

**APPEARANCES:**               **OF COUNSEL:**

**FOR THE PLAINTIFF:**

JESSICA M. LEWIS, a/k/a
MARK L. BROOKS
Plaintiff, *pro se*
90-A-6426
Auburn Correctional Facility
PO Box 618
Auburn, NY 13024

**FOR THE DEFENDANTS:**

HON. ELIOT SPITZER           SEAN M. SEALY
New York State Attorney General   Assistant Attorney General
The Capitol
Albany, New York 13204-2455     DEBORAH A. FERRO
                                         Assistant Attorney General

**Gary L. Sharpe**
**U.S. District Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiff *pro se* Mark Brooks a/k/a Jessica Lewis brings this action pursuant to 42 U.S.C. § 1983.  Lewis alleges that the defendants violated her Eighth and Fourteenth Amendment rights.[1]  Pending are Lewis' objections to Chief Magistrate Judge Gustave DiBianco's Report-Recommendation.  After careful consideration of the arguments, the relevant parts of the record, and the applicable law, the court adopts the Report-Recommendation in its entirety.[2]

### **II. Procedural History**

In her September 12, 2000 complaint, Lewis alleged that the defendants denied her proper medical treatment for her transsexualism and/or Gender Identity Disorder (GID).  *Dkt. No. 1*.  On January 4, 2002, the defendants moved for summary judgment.  *Dkt. No. 40*.  On September 19, Chief Judge DiBianco issued a report recommending that the motion be granted, and the complaint dismissed in its entirety.  *Dkt. No. 53*.  Lewis

---

[1] The court honors plaintiff's preference, and uses the female pronoun.

[2] The Clerk is directed to append Chief Judge DiBianco's Report-Recommendation to this decision, and familiarity is presumed.

2

objected.  *Dkt. Nos. 56*, *58.*  On July 15, 2003, District Court Judge Lawrence E. Kahn issued an order dismissing Lewis' Fourteenth Amendment claim entirely, and her Eighth Amendment claim as to all defendants except Berg and Senkowski.  *Dkt. No. 61.*  On July 25, Berg and Senkowski filed a motion to vacate, *see Dkt. Nos. 63, 65,* which Judge Kahn granted on October 30.  *Dkt. No. 69.*  On December 23, Berg and Senkowski filed a motion for summary judgment.  *Dkt. No. 73.*  On March 10, 2005, Chief Judge DiBianco issued a report recommending that defendants' motion for summary judgment be granted.  *Dkt. No. 102*.

On March 31, this court issued an order adopting Chief Judge DiBianco's Report-Recommendation, and entered judgment against Lewis.  *Dkt. No. 103*.  On May 2, Lewis filed a motion for reconsideration, *see Dkt. No. 106*, and this court granted her motion, and vacated the judgment.[3]  On July 20, Lewis filed objections to Chief Judge DiBianco's Report-Recommendation.  *Dkt. No. 110.*

### III.  **Discussion**[4]

---

[3]The court granted Lewis' motion for reconsideration due to an address change that did not allow her to timely object.

[4]The court adopts the factual summary in Chief Judge DiBianco's Report-Recommendation and assumes familiarity with the facts alleged in Lewis' Complaint.  *Dkt. Nos. 102,1*.

3

## A. Standard of Review

By statute and rule, district courts are authorized to refer prisoner civil rights cases to magistrate judges for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(A) & (B); L.R. 40.1, 72.3(c), 72.4(a); General Order #12, §D(1)(G).

When a report and recommendation is filed, parties must comply with specified procedures if they seek statutorily mandated district court review. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); L.R. 72.1(c). The local rules require that parties must file written objections that specify the findings and recommendations to which they object, and the basis for their objections. *Cf.* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); L.R. 72.1(c).

If a party fails to object in a timely manner, it procedurally defaults and is not entitled to judicial review. *Almonte v. NYS Div. of Parole*, No. 04-CV-484, 2006 WL 149049, at *3 (N.D.N.Y. Jan. 18, 2006)(citing *inter alia Thomas v. Arn*, 474 U.S. 140, 149 & n.7, 150, 152 (1985)). Although the doctrine of procedural default developed as a Circuit appellate rule, it applies in the district courts as long as parties, including those appearing *pro se*, receive clear notice of the consequences of their failure to properly object. *Almonte*, 2006 WL 149049, at *3 (citations omitted); *see also*

4

*Thomas v. Arn*, 474 U.S. at 149 & n.7 (statute does not preclude procedural default analysis at the district court level). The notice requirement is satisfied if the report at least states that the failure to object will preclude appellate review. *Almonte*, 2006 WL 149049, at *3 (citation omitted).[5]

Although failure to object or timely object constitutes procedural default, lack of specificity also gives rise to default. *Almonte*, 2006 WL 149049, at *4. The local rule requires that objections address specific findings and conclusions. *Id*. Therefore, a party that limits its specific objections to a part of a report's findings or recommendations procedurally defaults as to the remainder. *Id*. Frivolous or conclusory objections fail to satisfy the specificity requirement. *Id*. Furthermore, resubmission of the same papers and arguments as submitted to the magistrate judge fails to comply with the specificity requirement and also results in default. *Id*.

The district court must review *de novo* those portions of a magistrate judge's findings and recommendations that have been properly preserved

---

[5]The following statement accompanies all magistrates' reports issued in this district: [P]ursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1983); *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e)(emphasis in the original).

5

by compliance with the specificity requirement.  *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); L.R. 72.1(c).[6]  *De novo* review requires that the court give fresh consideration to those issues preserved by specific objections.  It will examine the entire record, and make an independent assessment of the magistrate judge's factual and legal conclusions.  *Almonte*, 2006 WL 149049, at *5 (internal quotation and citation omitted).  After review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge ... [and] may also receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1)(C);[7] FED. R. CIV.

---

[6] The decision to employ procedural default is discretionary with the district court.  *Almonte v. NYS Div. of Parole*, No. 04-CV-484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006)(citation omitted).  Such discretion is "based on, among other factors, whether the defaulted argument has substantial merit or, put otherwise, whether the magistrate judge committed plain error in ruling against the defaulted party."  *Id.*  As the Supreme Court has observed:
> [T]he district court ... must exercise supervision over the magistrate.  Even ... [if a procedural default rule permits a] ... district judge ... to refuse to review a magistrate's report absent timely objection ... [t]he rule merely establishes a procedural default that has no effect on the ... court's jurisdiction.  The district judge has jurisdiction over the case at all times.  He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment.  Any party that desires plenary consideration need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review, *sua sponte* or at the request of a party, under a *de novo* or any other standard.  *Thomas v. Arn*, 474 U.S. 140, 154 (1985).

[7] 28 U.S.C. § 636(b)(1) actually employs the phrase "*de* novo determination" rather than "*de novo* hearing," thus permitting "whatever reliance a district judge, in the exercise of sound judicial discretion, [chooses] to place on a magistrate's proposed findings and recommendations."  *Grassia v.* Scully, 892 F.2d 16, 19 (2d Cir. 1989) (citing *Raddatz*, 447 U.S. at 676).  When the district court makes its *de novo* determination, the parties have no right to

6

P. 72(b).

The more complex question arises when a party procedurally defaults, the court is not statutorily mandated to conduct *de novo* review, but it concludes that some review is in order nonetheless. Under these circumstances, it is within the court's discretion to elect an appropriate standard. *Almonte*, 2006 WL 149049, at *5.

28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure are both silent on the appropriate standard under such circumstances; and district courts have applied standards with varying names and definitions.[8] Some adopt the "clearly erroneous" standard that

---

present evidence not submitted to the Magistrate Judge. Nonetheless, the court retains the discretion to consider additional evidence although it should afford the parties notice. *See Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998) (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994); *Pan American World Airways, Inc. v. International Bhd. of Teamsters*, 894 F.2d 36, 40 n. 3 (2d Cir. 1990)).

[8]The Rule 72(b) Advisory Committee Note suggests that the court will review for "clear error," stating:
> "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *See Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974), *cert. denied*, 419 U.S. 879, quoted in House Report No. 94-1609, 94th Cong.2d Sess. (1976) at 3. *Compare Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). *See* FED. R. CIV. P. 72(b) advisory committee's note (1983).

Numerous decisions cite the 1983 Note as persuasively requiring "clear error" review, but the value of that Note is undercut by dicta in the Supreme Court's 1985 decision in *Thomas v. Arn*. There, the Court stated: "[W]hile the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Arn*, 474 U.S. at 154.

7

is articulated in the statute and federal rule governing review of a magistrate judge's nondispositive orders, and referenced in the 1983 Advisory Committee Note. *Almonte*, 2006 WL 149049, at *6 (citations omitted); *see infra* n. 3. Given the definition typically assigned to "clearly erroneous," courts review a report to determine whether the findings are against the clear weight of the evidence, or whether the recommendations cause the court to definitely and firmly conclude that a mistake has been committed. *Almonte*, 2006 WL 149049, at *6 (citations omitted). Other courts have adopted a "contrary to law" standard which means that the report fails to apply, or misapplies, relevant statutes, case law, or rules of procedure. *Id*. When excusing procedural default in the interests of justice, the Circuit has reviewed the underlying decision or report for "plain error." *Id*. Plain error is one that is clear or obvious and affects substantial rights. *Id*.

    Mindful that district courts retain jurisdictional authority over all dispositive issues, this court routinely reviews reports before entering final judgment whether objections are registered or not. *Almonte*, 2006 WL 149049, at *6. When the court does so, however, it is aware that the reports are generated by magistrate judges with extraordinary professional

8

and judicial experience. *Id.* Accordingly, when required by statute or rule or when the court's routine review so dictates, the court will make a *de novo* determination of findings and recommendations. *Id.* Absent *de novo* review, the court will apply a "clearly erroneous" standard, and defines that phrase as follows: a report is clearly erroneous if the court determines that there is a mistake of fact or law which is obvious and affects substantial rights. *Id.* Furthermore, the court will routinely identify issues which have been procedurally defaulted, and articulate the standard of review applied to all issues. *Id.*[9]

## B. Objections

Lewis makes a series of both legal and factual objections. First, she makes a specific objection to Judge DiBianco's finding of no personal involvement on behalf of defendant Berg. Lewis argues that she informed Berg of her inability to receive proper medical care for her GID and contends that he is responsible for her care. The court will review this finding under a *de novo* standard.

As Chief Judge DiBianco noted, personal involvement of a defendant

---

[9]Lewis does not object to: (1) the Judge's finding of no personal involvement on behalf of defendant Senkowski; or (2) the finding of qualified immunity on behalf of either Berg or Senkowski. Since neither finding is clearly erroneous, the court adopts both as a basis for dismissing Lewis' complaint.

9

in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *See Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001)(internal citation omitted). Liability may not be premised on a *respondeat superior* or vicarious liability doctrine. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). A supervisory official is only liable for constitutional violations if he: (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation. *See Scott v. Coughlin*, 78 F.Supp.2d 299, 312 (S.D.N.Y. 2000)(internal quotation and citation and omitted).

Here, Lewis claims that Berg became actually or constructively aware that she had made several letter requests to both the Mental Health Satillite Unit (MHSU) and the Office of Mental Health (OMH) for medical care and had been subsequently denied. She also claims that in March and April of 1999, she directly sent letters to Berg, apprising him of her inability to receive her desired medical treatment.[10] Lewis does not categorize Berg's

---

[10]Among the eleven treatments sought by Lewis are the following: gender reassignment surgery, breast implants, and hormone therapy.

10

omission as a "mere failure to respond to letters" but instead contends that he had a "duty or a responsibility to take some action or 'take reasonable steps to diminish the risk to the plaintiff.'" *Pl. Objections, Dkt. No. 110, p. 9.*[11]

In support of her contention, Lewis cites Second Circuit case law where the defendant prison officer had notice of constitutional violations and therefore could not escape personal responsibility. *See McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir. 1983); *see also Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989).

In *McCann*, however, unlike this case, defendants were liable for their "gross negligence" and "deliberate indifference" to the constitutional rights of inmates. It was an uncontested fact that the *McCann* defendants had actual knowledge of the unconstitutional practices taking place and failed to act on this information. *McCann*, 698 F.2d at 125. Similarly, *Meriwether* cites the standard set out in *McCann* for "gross negligence" and "deliberate indifference" as a basis for finding personal involvement in a constitutional violation. *See Meriwether*, 879 F.2d at 1048.

---

[11]Lewis also contends that as a DOCS supervisor, Berg has an overarching duty to care for the medical needs of all inmates and that this duty cannot be shifted to the MHSU or OHM. This contention is without merit without a showing of personal involvement by Berg.

11

Here, it is evident that Berg acted neither grossly negligent or deliberately indifferent in his treatment of Lewis' requests.  First, Berg contends that he never received any letters directly from Lewis in March or April of 1999.[12]  *Berg Aff. at ¶ 28.*  At several points in her objections, Lewis asserts that Chief Judge DiBianco improperly resolved an issue of fact by adopting Berg's assertion that he never received the letters.  While Lewis maintains that the letters placed Berg on notice of alleged constitutional violations and therefore made him personally involved, this is a question of law.  Contrary to what Lewis states, simply receiving a letter is not a sufficient basis for liability under § 1983.  As Chief Judge DiBianco noted, even if Berg had received letters or referred letters on behalf of Lewis, these facts alone are not sufficient to hold him personally responsible for alleged constitutional violations.  *See Boddie v. Morganthau*, 342 F. Supp.2d 193, 203 (S.D.N.Y. 2004)(internal citations omitted)(holding that even if a supervisory official ignores an individual's letter, that fact alone is insufficient to establish personal responsibility).

Second, as Chief Judge DiBianco further noted, Berg is neither a

---

[12]Berg further indicated that while Lewis had several opportunities to address her situation to him in person, she did not do so.  He also pointed out that if he had received letters from Lewis, he would have responded and there would be copies on file.  *Berg Aff. at ¶¶ 28-30.*

12

medical provider nor did he have any supervisory capacity over the staff or decision-making of the MHSU or OMH. Berg, in fact, had no authority to make any treatment decisions at all and therefore was not personally involved in the denial of Lewis' medical claim.[13] Accordingly, Berg was not personally involved and the claim against him is dismissed.

Lewis also makes several objections to Judge DiBianco's Eighth Amendment analysis. The court will also review these objections under a *de novo* standard.

To state a claim based on inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000). Prison officials, however, have "broad discretion in determining the nature and character of medical treatment afforded to inmates." *See Murray v. Michael*, 03-CV-1434, 2005 WL 2204985, at *13 (N.D.N.Y. Sept. 7, 2005)(internal citations omitted). "An inmate does not have the right to

---

[13]Lewis also objects to Chief Judge DiBianco's finding that it may have been reasonable for Berg to believe her issues would be resolved in the Grievance System and therefore he need not respond to her letters. *Report and Recommendation, Dkt. No. 102, p. 17*. As mentioned, personal involvement does not occur merely because a supervisory official was sent a letter.

13

treatment of her choice." *Id.*[14]

Here, Chief Judge DiBianco pointed out that the two main obstacles to Lewis bringing a successful Eighth Amendment claim were: (1) she had never been diagnosed with GID by medical personnel; and (2) she demanded a great deal of treatment on the basis on self-diagnosis. *Report and Recommendation, Dkt. No. 102, p. 17*.[15]

Lewis made several objections challenging Chief Judge DiBianco's finding. First, Lewis objects to Chief Judge DiBianco's reference to the report of Leo Ward, a program psychologist, who examined Lewis in March 2001. *Pl. Objections, Dkt. No. 110, p. 14*. She specifically claims that Chief Judge DiBianco gave undue credit to this report. This contention is without merit. Chief Judge DiBianco used the report of Mr. Ward as part of his overall analysis. Specifically, he found that for the duration of her time in prison, Lewis consistently received good reviews and statements that she was well-adjusted, with no serious mental

---

[14] It should also be noted that the case law addressing transsexualism and its proper course of treatment involved individuals who were already medically diagnosed with the condition and who began hormone treatment before their incarceration. *See Cuoco v. Moritsugu*, 222 F.3d 99, 103 (2d Cir. 2000).

[15] Chief Judge DiBianco noted that although Lewis wrote many letters regarding her situation, it appears that she did not write them to medical personnel who could actually diagnose her condition. *Report and Recommendation, Dkt. No. 102, pp. 17-18.*

14

problems. Mr. Ward reported that Lewis had told him that she had no mental health problems associated with her GID and that she did not need "psych" services "as of today." *Report and Recommendation, Dkt. No. 102, p. 18*. Chief Judge DiBianco concluded that if Lewis was concerned about receiving medical care she would have brought it to the attention of the medical personnel who examined her during the time she claims to have needed treatment.

Second, Lewis claims that the Judge gave undue weight to the opinion of defendants' expert medical witness, Dr. Walter Meyer. *Pl. Objections, Dkt. No. 110, p. 15*. This contention is without merit. Like the report of Mr. Ward, Chief Judge DiBianco simply used Dr. Meyer's affidavit as part of his overall analysis. Specifically, Dr. Meyer opined that an individual must be diagnosed with GID by a psychiatrist or psychologist. *Report and Recommendation, Dkt. No. 102, p. 20; Meyer Aff. at ¶ 4.* Dr. Meyer further noted that any treatments needed to treat GID, such as hormone therapy, must be determined by medical personnel. *Id. at ¶ 9.* Chief Judge DiBianco's use of Dr. Meyer's affidavit was to show that Lewis had not been diagnosed by a medic, but instead, self-determined that she had GID and the required treatments. Accordingly, her inadequate medical

15

care claim is dismissed.

Third, Lewis also objects to Chief Judge DiBianco's use of the legal distinction between inmates who began hormone therapy for GID before incarceration and those who seek hormone therapy after incarceration. *Pl. Objections, Dkt. No. 110, pp. 16-17*. This contention is without merit. Chief Judge DiBianco used the distinction to show that had Lewis been diagnosed with GID and begun hormone treatment before prison, she may have been entitled to continuing treatment. However, the opposite is true. Lewis decided for herself (after a period of approximately ten years in prison) that she was a transsexual and that she need treatments. Accordingly, her inadequate treatment claim under the Eighth Amendment is dismissed.

## IV.  Conclusion

Having reviewed the objected-to portions of the Report-Recommendation *de novo*, the remainder under a clearly erroneous standard, and Lewis' objections, this court accepts and adopts the recommendation of Chief Judge DiBianco for the reasons stated in the March 10, 2005 Report-Recommendation.

**WHEREFORE**, for the foregoing reasons, it is hereby

16

**ORDERED** that the motion for summary judgment filed on behalf of the remaining two defendants, Berg and Senkowski (Dkt. No. 73) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**.

**ORDERED** that the Clerk of the Court provide copies of this Order to the parties.

**IT IS SO ORDERED.**

April 20, 2006
Albany, New York

*Gary L. Sharpe*
United States District Court Judge